IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                Plaintiff-Appellee,

    Vs.                                     No. 02-40069-01-SAC

TERENCE COOPER,

                Defendant-Appellant.

MEMORANDUM AND ORDER

This writ of continuing garnishment appeal, referred to the magistrate judge for a report and recommendation, comes before the court on objections by the judgment debtor, Terence Cooper.

**I. Procedural Background:**

This court ordered defendant to pay restitution and serve a term of imprisonment upon conviction for offenses involving fraud. Judgment of conviction was entered on February 9, 2006. Defendant did not appeal his conviction. Pursuant to the ordered restitution, the government sent a properly addressed demand letter requesting payment to defendant on March 22, 2006. The government applied for a writ of continuing garnishment on May 19, 2006. In

response to the government's request, the clerk of the court issued a writ of continuing garnishment to Ronald Sandhaus on May 19, 2006.

Defendant timely objected to the writ of garnishment. Defendant contended that he is exempt from garnishment because: (1) the funds in question constitute "undelivered mail," (2) he is current with a court-ordered payment plan, (3) he assigned the settlement funds to his wife, and (4) that the settlement funds constitute unpaid wages and thus are subject to only partial garnishment. The district court referred defendant's objections to the magistrate judge for a report and recommendation.

## II.  Facts:

After the jury returned a verdict of guilty on charges of health care fraud, conspiracy to commit health care fraud and wire fraud, defendant was sentenced to 48 months imprisonment and 3 years of supervised release. Additionally, this court ordered defendant to pay an assessment of $2,900 and restitution of $1,242,972.82. The court ordered a payment plan that read in pertinent part:

> Payment to begin immediately. . . may be combined with (d) payment of not less than 10% of the funds deposited each month into inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of 3 years, to commence 30 days after release from imprisonment to a term of supervision.

Judgment (Doc. 327), at p. 7.

In an unrelated civil case, Case No. 03-CV-0964, in the United States District Court for the Western District of Missouri, defendant settled for a lump sum of $10,000. Defendant executed a power of attorney to his counsel in that case, Ronald Sandhaus (Garnishee Sandhaus), authorizing Sandhaus to receive those settlement funds and place them into a trust account. Defendant further instructed garnishee Sandhaus to "deliver the settlement check to [defendant Cooper's] wife, Jenn Cooper" and "complete all necessary paperwork" to accomplish this purpose. (Doc. 393), at Exhibit B (Docs. 393-3). Pursuant to this agreement, garnishee Sandhaus received the funds and deposited them into the trust. The writ of garnishment was issued before the funds were transferred to defendant's wife.

### III.  Summary of Magistrate's Order:

Magistrate Judge Gary Sebelius issued a report and recommendation addressing each of defendant's four objections and finding no merit in them. First, the magistrate judge found that consistent with his power of attorney, garnishee Sandhaus, on behalf of defendant, deposited the funds in question into a trust account, evidencing the fact that the funds were received and, therefore, not undelivered mail. Second, the magistrate judge concluded that the government had

executed a proper demand on defendant and that the court-ordered payment plan did not preclude the instant garnishment.  Third, the magistrate judge found that defendant's execution of a power of attorney did not effectively create an assignment to his wife.  Finally, because garnishee Sandhaus asserted that the settlement funds were in the nature of general damages, the magistrate judge reasoned that these funds could not be unpaid wages.  Defendant has now filed objections to all four of the magistrate judge's findings articulated in the report and recommendation.

### IV.  Standard of Review:

Upon objections to a magistrate judge's report and recommendation, "the district court must undertake a de novo review of the record."  *Wildermuth v. Furlong*, 147 F.3d 1234, 1236 (10th Cir. 1998).  The district court has considerable judicial discretion in choosing what reliance to place on the magistrate judge's findings and recommendations.  *See Andrews v. Deland*, 943 F.2d 1162, 1170 (10th Cir. 1991) (citing *United States v. Raddatz*, 447 U.S. 667, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980)), *cert. denied*, 502 U.S. 1110, 117 L. Ed. 2d 451, 112 S. Ct. 1213 (1992).  When review is de novo, the district court is free to follow or wholly ignore the magistrate judge's recommendation, but it should make an independent determination of the issues without giving any special weight to the prior

recommendation. *Andrews*, 943 F.2d at 1170 (citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988)). The district court is required to consider relevant evidence of record and not merely review the magistrate judge's recommendation. *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995). In short, the district court may accept, reject, or modify the magistrate judge's findings, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

**V.  Findings and Analysis:**

The United States may enforce a judgment imposing a criminal fine or restitution order "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," subject to certain exceptions and limitations. 18 U.S.C. § 3613(a) & (f); *United States v. Kemp*, 2002 U.S. Dist. LEXIS 18713 (D. Tex. 2002) (unpublished opinion). One such procedure is a writ of garnishment under the Federal Debt Collection Practices Act (FDCPA), 28 U.S.C. § 3205. The FDCPA provides, in pertinent part:

> A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody or control of a person other than the debtor, in order to satisfy the judgment against the debtor . . . .

28 U.S.C. § 3205. Garnishment is a "legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." *Kokoszka v. Belford*, 417 U.S. 642, 649 (1974).

After the government obtains a writ of garnishment, it must serve the writ both to the judgment debtor and to the garnishee. 28 U.S.C. § 3205(c)(3). The government must convey to the garnishee the requirement to file a written answer submitted under oath and inform the judgment debtor of his or her right to object and to obtain a formal hearing. *Id*. Within 20 days of the garnishee's answer, the judgment debtor or the United States may file a written objection to the garnishee's answer and ask for a formal hearing. 28 U.S.C. § 3205(c)(5). The objecting party bears the burden of proving the grounds for the objection. *Id*.; *see also United States v. Sawaf*, 74 F.3d 119, 121 (6th Cir. 1996). Thus, defendant, as the judgment debtor, must establish a sufficient basis for exempting the funds in question from garnishment.

### A. Undelivered Mail:

Defendant contends that the funds in question are exempt from collection because they fall withing the category of undelivered mail. *See* 18 U.S.C. § 3613(a)(1). Defendant cites 26 U.S.C. § 6334(a) which provides, in relevant part: "There shall be exempt from levy–. . . (5) Undelivered mail.–Mail,

addressed to any person, which has not been delivered to the addressee. . . ." Here, it is undisputed that the funds in question were deposited into garnishee Sandhaus's trust account. In order for these funds to be deposited, a check must have been delivered. Thus, a reasonable conclusion can be made that the undelivered mail exception does not apply. *See United States v. Kemp*, 2002 U.S. Dist. LEXIS 18713, p. *5 (D. Tex. 2002). Defendant has not come forth with sufficient proof to establish this exemption.

### B. Compliance With Court-Ordered Payment Plan and Demand Letter:

Defendant first argues that the government cannot pursue its enforcement remedies under 18 U.S.C. § 3613(a)(1) as he is current with the court-ordered payment plan. Defendant also maintains that he received no demand letter from the government, another basis for relieving him from garnishment. Again, these assertions are without merit.

Defendant's compliance with the court-ordered payment plan is uncontroverted, yet this fact does not serve as a defense to the government's use of a writ of garnishment to collect on the restitution order. As merely one of many forms of ensuring restitution, a court-ordered payment plan does not preclude the government from pursuing other avenues to recover the restitution. As directly provided in 18 U.S.C. § 3664(n):

> "If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, *settlement*, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed."

(emphasis added). This language explicitly demonstrates that any amount a defendant receives during a time of imprisonment can be levied by the United States to reduce that defendant's debt to the government. Other courts have taken the same approach. *See, e.g., United States v. James*, 312 F. Supp. 2d 802, 806 (E.D. Va. 2004) ("While a schedule of $150 per month was put in place in the event restitution was not paid immediately, the existence of this schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied."); *United States v. Bedonie*, 317 F. Supp. 2d 1285, 1331 (D. Utah 2004), *reversed and remanded on other grounds by United States v. Bedonie*, 413 F.3d 1126 (10th Cir. 2005) ("This provision allows a crime victim to convert immediately the restitution order into a judgment for the full amount of the order, apparently without regard to any payment schedule that the court might set."). Despite defendant's compliance with the court-ordered payment plan, the government in this case can likewise target defendant's settlement funds to further satisfy defendant's obligation to provide restitution.

Next, defendant argues that the government has not properly administered a demand 30 days prior to the garnishment application as required by

8

28 U.S.C. § 3205(b)(1)(B). Section 3205(b)(1) states in relevant portion, "The United States shall include in its application for a writ of garnishment. . . the nature and amount of the debt owed and the facts that not less than 30 days has elapsed since demand on the debtor for payment of the debt was made and the judgment debtor has not paid the amount due. . . ." *Id*. Thus, defendant correctly reads this section to require the government to issue a proper demand as a prerequisite to applying for a writ of garnishment. *Id*. Still, defendant offers no proof that the government failed to meet this requirement. The demand letter is dated March 22, 2006, and the government represents that it was sent on that day. This is more than fifty days before the writ of garnishment was issued. The demand letter describes the amount and nature of the judgment against defendant and advises defendant that, in the event that he is "unable to pay this amount in full," he should return a completed financial statement. *See* (Doc. 393), at Exhibit B (Docs. 393-4). The demand letter used the same address for defendant that was stated in the application for writ of continuing garnishment (Doc. 379) and that subsequently was used to serve him with the writ of garnishment (Doc. 380) and with the garnishee's answer (Doc. 383). Defendant timely filed his answer to the writ and the answer, both of which were apparently received by him. (Doc. 386). These facts establish that the government properly addressed its demand letter, as this is the only known address

for defendant and he received all other pleadings sent to this address. The government represents that its demand letter was not returned. Defendant's bare denial does not effectively controvert the evidence showing a demand letter was sent to defendant more than 30 days before the application for the writ of garnishment, as required by 28 U.S.C. § 3205(b)(1)(B). Based on the court's conclusion that a valid demand existed and a court-ordered payment plan does not preclude the use of other amounts to satisfy restitution, the court does not find defendant's second basis for exemption convincing.

**C. Assignment to Defendant's Wife:**

In his third ground for exemption, defendant maintains that he validly assigned the settlement funds to his wife. The power of attorney executed by defendant authorized garnishee Sandhaus to endorse and deposit the settlement check into the trust account, to "deliver the settlement check to [Defendant Cooper's] wife, Jenn Cooper," and to "complete all necessary paperwork." *See* (Doc. 393), at Exhibit B (Docs. 393-3). Defendant argues that this provision allows for an express assignment to his wife. The government counters that this provision merely provides direction to garnishee Sandhaus regarding where to deliver the funds.

As the magistrate judge noted, the word "assign" does not appear anywhere in the power of attorney. It only authorizes garnishee Sandhaus to act as an agent for defendant in accepting and depositing the settlement funds and further charges Sandhaus to deliver the funds to defendant's wife. The provision does not authorize garnishee Sandhaus to accept payments on *behalf* of defendant's wife or act as her agent. For these reasons, the government's contention that no valid assignment occurred, is persuasive. On another level, the court further agrees with the Magistrate Judge that even assuming a transfer of funds had occurred through the power of attorney, defendant would still face an uphill battle because of the government's power to avoid fraudulent transfers. *See* 28 U.S.C. §§ 3304, 3306.

**D.  Unpaid Wages:**

Finally, defendant argues alternatively that the disputed settlement funds qualify as unpaid wages subject to only partial garnishment as provided in § 1673(a) of the Consumer Credit Protection Act (CCPA). Section 1673(a) of the CCPA states:

> "(a) Maximum allowable garnishment
> Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
> (1) 25 per centum of his disposable earnings for that week. . . ."

The statute defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a).

The purpose of §1673(a) of the CCPA was to prevent honest debtors from plunging into bankruptcy by protecting at least 75 percent of their regular take home pay so that they would have enough cash to meet their basic personal and family needs. H.R. Rep. No. 90-1040, at 10 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1962, 1977-79. Looking to this legislative history, the United States Supreme Court has interpreted "earnings" and "disposable earnings" as used in 15 U. S. C. §§ 1672, 1673 as "periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Kokoszka*, 417 U.S. at 651. Accordingly, this definition does "not pertain to every asset that is traceable in some way to such compensation." *Id.* (quoting *In re Kokozko*, 479 F.2d 990, 997 (2d Cir. 1973). Based on this understanding of the scope of what constitutes earnings, the Court in *Kokoszka* determined that a tax refund does not fall into this definition. *Id*. Likewise, the Tenth Circuit has not considered tax refunds as "earnings" and has thus subjected such amounts to full garnishment. *See Trudeau v. Royal (In re Trudeau)*, 237 B.R. 803 (B.A.P. 10th Cir.

1999); *see also Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 524 (B.A.P. 10th Cir. 2002) (applying *Kokoszka* definition of earnings to CCPA claim).

Without further proof from defendant conveying the exact nature of the settlement he obtained, the court considers the settlement funds paid here as most analogous to a tax refund.  Defendant has not shown that he received this lump sum as part of a regularly issued paycheck or pursuant to any routine expectation for compensation for services.  Nor has defendant demonstrated that this settlement payment is directly linked to his former employment in the same manner that earnings are directly tied to an employee's performance of services.  *See Carbaugh*, 278 B.R. at 524 (requiring "direct link" between services and earnings, fact that funds "*derived* from wages" not sufficient) (emphasis added).  In a letter to the magistrate judge, garnishee Sandhaus, who acted as defendant's attorney during the settlement proceedings, explicitly labeled these funds as "general damages."  *See* (Doc. 393), at Exhibit B (Docs. 393-2).  Consequently, consistent with the legislative history of the CCPA and the Act's narrow definition of earnings, because defendant has failed to prove a direct link between the "general damages" he received from the court settlement and compensation for services, the court finds that these funds do not meet the statutory definition of "earnings."  Defendant's claim for partial exemption is denied.

IT IS THEREFORE ORDERED that defendant's objections to the writ of garnishment and to the magistrate's report and recommendations are overruled, and that the United States' writ of continuing garnishment to garnishee Sandhaus shall be enforced.

Dated this lst day of November, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge